IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| **AUTO-OWNERS INSURANCE COMPANY, a Corporation,** | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 7:03-cv-17 (HL) |
| **ROBERT B. ANDERSON, JR., and ANDERSON INSURANCE AGENCY, INC., a Corporation,** | : | |
| Defendants. | : | |

# **ORDER**

This matter is before the Court on Defendants' Motion on Actual Liability Requirement [doc 73]. After consideration, the Court denies the relief sought by the Motion, as more fully set forth below.

Auto-Owners Insurance Company brought a Complaint for Indemnity against Robert B. Anderson, Jr., and Anderson Insurance Agency, Inc. (hereinafter referred to collectively as "Anderson"). The gravamen of the complaint is that Anderson, as the owner and operator of Anderson Insurance Agency, acting without authority from Auto-Owners, issued a binder for insurance coverage to Allison Metal Fabrications, Inc., and that Auto-Owners was obligated to defend and settle a claim arising from the nonexistent policy, for which it now seeks indemnity from Anderson. After years of wending its way through the courts, the matter is now poised for trial. However, through this Motion, the parties have requested direction from the Court as

to what showing Auto-Owners must make in order to recover from Anderson.

Some background is necessary for a better understanding of the issue to be decided. An Order on Defendants' Motion for Summary Judgment was previously issued in this case. The following statement of facts is from that Order.

> The record indicates that Plaintiff Auto-Owners Insurance Company (hereafter "Auto-Owners") employed Defendant Anderson Insurance Company, Inc. (hereafter "Anderson Insurance") as its agent for the sale of insurance policies in the Valdosta, Georgia area. Defendant Robert Anderson (hereafter "Mr. Anderson") was the sole shareholder and principal of Anderson Insurance.
>
> On April 26, 1993, Anderson Insurance accepted an application for comprehensive general liability coverage on behalf of Allison Metal Fabrication, Inc. (hereafter "Allison") and issued a binder to Allison for a policy in the aggregate amount of two million dollars, with a one million dollar per-occurrence limit. As agent for Auto-Owners, Anderson Insurance was authorized to issue policy binders prior to a final decision by Auto-Owners to accept or deny the application for coverage. The binder on its face was scheduled to expire on May 26, 1993. Georgia law permits temporary binders prior to the issuance of an actual policy, but limits the term of application. O.C.G.A.§ 33-24-33(b) provides:
>
>> No binder shall be valid beyond the issuance of the policy with respect to which it was given or beyond 90 days from its effective date, whichever period is the shorter.
>
> Beyond 90 days, a binder may only be extended or renewed "with the written approval of the Commissioner or in accordance with such rules and regulations relative thereto as the Commissioner may promulgate." O.C.G.A.§ 33-24-33(c). There is no evidence that Anderson Insurance ever made any attempt to extend or renew the binder. It is undisputed that Auto-Owners never issued a policy for Allison.
>
> Anderson Insurance collected premiums from Allison, but never paid the premiums to Auto-Owners. Mr. Anderson has testified that his company kept the premiums in its own bank account pending the issuance of a policy by Auto-Owners. He acknowledges that his company did not forward the premiums collected to Auto-Owners because no policy had been issued. According to Mr.

Anderson, it was the policy of Anderson Insurance to collect premiums from clients prior to the issuance of a policy, so that the company would be prepared to make the initial payment quickly once the policy issued. Mr. Anderson has testified that his company returned the premiums to Allison when it learned that Auto-Owners did not intend to issue a policy.

Despite Mr. Anderson's knowledge that no policy had been issued, Anderson Insurance provided several "Certificates of Insurance" on behalf of Allison. These Certificates of Insurance were representations that Allison was covered by a policy of liability insurance issued by Auto-Owners. On October 12, 1993, Anderson Insurance delivered one such Certificate of Insurance to a contractor Welbourne, Florida, known as Columbia Grain. Allison required this certificate as proof of coverage, in order to be eligible to begin work as a subcontractor on a project in Columbia County, Florida. The Certificate of Insurance lists Auto-Owners under the section headed "COMPANIES AFFORDING COVERAGE," and includes the following statement:

> This is to certify that the policy of insurance listed below [has] been issued to the insured named above for the policy period indicated. Notwithstanding any requirement, term, or condition of any contracts or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions, and conditions of such policies. Limits shown may have been reduced by paid claims.

Where the form calls for a policy number, the October 12 certificate has the word "Pending." The certificate shows the policy as effective on 4/26/93 and expiring on 4/26/94. In the bottom left corner, it shows the signature Robert B. Anderson, Sr., although an employee of Anderson Insurance has testified by affidavit that the signature was applied with a stamp. The record indicates that Anderson Insurance issued similar certificates to a number of contractors between April and October of 1993. There is no evidence that Allison was aware that these certificates were false.

On October 12, the same date that Anderson Insurance issued a certificate of insurance to Columbia Grain, a man named Harold Hutson was seriously injured on the Columbia County, Florida job site. Mr. Hutson initiated litigation against Allison, who notified Auto-Owners and requested defense in the case. Although it had no valid contract of insurance with Allison, Auto-Owners determined that it would be obligated to defend and indemnify Allison under

principles of Georgia agency law, as a result of the representations of its agent, Anderson Insurance. On October 31, 1997, Auto-Owners executed a settlement and release of Mr. Hutson's claims for $450,000. In the present action, Auto-Owners seeks indemnity for that settlement from Anderson Insurance and Mr. Anderson, alleging that its liability to Allison resulted from the fraud or negligence of those Defendants in their representations to Allison and Columbia Grain that a policy existed.

(Order of Feb. 19, 2004 [doc.21] at 1-4.)

In the Order on Defendants' Motion for Summary Judgment, the Court found that "Anderson Insurance's written representations to Allison of an existing insurance policy obligated Auto-Owners to provide coverage for Allison, even though Auto-Owners itself never agreed to issue a policy." (Id. at 5.) The Court found, however, that genuine issues of material fact remained with regard to whether Auto-Owners' settlement with Hutson "was consistent with actual legal liability." (Id. at 6.) The Court also found that genuine issues of material fact remained with regard to whether Defendants committed fraud. (Id.)

In a later Order, on Defendants' Second Motion for Summary Judgment, the Court reaffirmed that "[t]o the extent that Auto-Owners can prove that fraud on the part of Anderson caused it to be liable to Allison, it has a cause of action for indemnity against Anderson." (Order of Feb. 10, 2005 [doc. 53] at 5-6.) The Court also noted that "the misrepresentations of Anderson, as agent, constructively created a contract that Auto-Owners, as principal, was obligated by equity to honor." (Id. at 4.) The Court concluded, therefore, that "[b]ecause Auto-Owners was liable to provide coverage to Allison solely as a result of Anderson's alleged fraud, it has an action for indemnity against Anderson." (Id. at 4.)

In another Order–Order on Defendants' Motion in Limine–issued the same day as the Order on Defendants' Second Motion for Summary Judgment, the Court restated its previous ruling "that principles of agency law and equitable estoppel gave Auto-Owners a legal obligation to provide coverage to Allison for any liability to Mr. Hutson" and also reaffirmed that issues of fact remain "with regard to whether Anderson's representations as to coverage were fraudulent." (Order of Feb. 10, 2005 [doc 54] at 2 n.1.)  In the Order, the Court also identified "one of the ultimate issues for the trier of fact in this case," namely whether Auto-Owners' settlement with Hutson "was consistent with a real legal obligation that Allison had to Mr. Hutson." (Id. at 2.)

The most recent Motion seeks to have the Court further define the showing Auto-Owners must make, *vis a vis* its settlement with Hutson, in order for it to recover against Anderson. Defendants urge the Court to find that "Auto-Owners must prove Allison Metal was actually liable to Harold Hutson and that Auto-Owners cannot recover based on a showing of potential liability." (Defs.' Mem. Supp. Mot. at 7.)  Plaintiffs, on the other hand, contend they must prove only that the settlement between Auto-Owners and Hutson was reasonable, prudent, and reached in good faith. (Pls.' Resp Defs.' Mot. at 1.)

The Court has considered the authorities relied on by Defendants in support of their position and finds them inapplicable. None of the cases cited to the Court by Defendants involves factual circumstances similar to those at issue here, in which the alleged fraudulent conduct of an agent placed an insurer in the position of having to defend an "insured" under a nonexistent policy. Significantly, therefore, in none of the cases does the liability of the

5

indemnitor (Anderson here) turn on the liability of a policyholder to a third-party, as is the case here.  In many of the cases relied on by Defendants the party seeking indemnity was a joint tortfeasor–thus the party seeking indemnity was required to prove that those from whom indemnity was sought were negligent before they could be made to contribute.  *See, e.g.*, City of Albany v. Pippin, 602 S.E.2d 911 (Ga. Ct. App. 2004); Weissman v. Boating Magazine, 946 F.2d 811 (11th Cir. 1991).  In this case, however, Auto-Owners is not a joint tortfeasor and it makes no sense to require Auto-Owners to prove that Allison Metals was actually liable to Hutson, in order for Auto-Owners to recover against Anderson.

The wrongful acts attributed to Anderson in no way affected the conduct of Allison Metals toward Hutson.  Rather, the wrongful acts of Anderson, if any, resulted in Auto-Owners having to defend Allison Metals under the terms of a non-existent policy.  The duty to defend under a policy of insurance necessarily carries with it the corresponding right to enter into a settlement on behalf of the insured, if such a settlement is reasonable.  A wrongdoer whose wrongful conduct puts an insurer in the position of having to defend under a non-existent policy necessarily assumes the risk that defense of the insured will result in a settlement.  Under such circumstances it is not appropriate to then allow the wrongdoer to put the insurer to the task of proving that its insured would have been actually legally liable to the injured third-party–after all, legal liability is only one factor an insurer considers in deciding whether to settle a claim.

The most analogous case offered to the Court by Defendants in support of their position is the decision of the United States Court of Appeals for the Eleventh Circuit in GAB Business Services, Inc. v. Syndicate 627, 809 F.2d 755 (11th Cir. 1987).  In GAB Business Services, as

here, the principal sought indemnity from its agent. The principal alleged that the negligent conduct of its agent, in failing to protect the subject of the policy, resulted in the principal having to pay on a policy of insurance. Although disputing whether the claim was valid, the principal nevertheless settled with the insured for the limits of the policy, without allowing the agent to review the settlement or to defend the case. The principal then sought to recover from the agent the amount that it paid to its insured. The Eleventh Circuit said that the principal, as the indemnitee, had an obligation to allow the agent, as the indemnitor, to review the contemplated settlement. In the absence of the opportunity to review, the principal could recover only "that part of the settlement that corresponds to an actual liability caused by [the indemnitor's] breach of duty." GAB Business Svcs., 809 F.2d at 759.

The result in GAB Business Services is consistent with the line of cases on which Defendants rely, but distinguishable from this case in an important respect. In GAB Business Services, the agency was being asked to pay for injuries caused directly by its alleged wrongful conduct (failure to protect the subject of the policy). Consistent with the many cases relied on by Defendants, the Eleventh Circuit concluded that before being required to pay, the agency had the right to demand that the principal establish the agency's liability. Such a result does not follow here, however, because Defendants are demanding that Auto-Owners establish Allison's liability to Hutson, which is unrelated to Defendants' alleged wrongful conduct–the issuance of a false policy, and resulting injury–the duty to defend.

To the extent that the case law requires that Auto-Owners make a showing of "actual liability" before recovery can be obtained, as Defendants suggest, that "actual liability" stems

7

not from Allison Sheet Metal's obligations to Hutson, but from Auto-Owners' obligations to Allison Sheet Metal, because those obligations resulted from Defendants' alleged wrongful conduct, not the injury suffered by Hutson.  In other words, what Auto-Owners needs to do in order to recover against Anderson is prove that the settlement reached with Hutson on behalf of Allison Sheet Metal was reasonable and made in good faith and that the obligation to defend resulted from the fraudulent representations of Defendants.[1]  It is not necessary that Auto-Owners conduct a "mini-trial" to establish Allison Sheet Metal's actual liability to Hutson, although evidence concerning the underlying case certainly will be necessary in order to demonstrate the reasonableness of the settlement.  It is only necessary for Auto-Owners to show that the settlement it reached was reasonable in light of the facts and circumstances of the underlying case.  Such a showing, however, will necessarily require some evidence of Allison Sheet Metal's risk of exposure to a judgment in the event of a trial, but will be less than a showing of "actual liability" toward Hutson.

Defendants have asked the Court to find that "for Auto-Owners to recover in this common law indemnity case, Auto-Owners must prove Allison Metal was actually liable to Harold Hutson and that Auto-Owners cannot recover based on a showing of potential liability." (Mem. Supp. Mot. at 7.)   Insofar as that request is inconsistent with the conclusions reached in this Order, the Motion on Actual Liability Requirement is denied.  The Court will not attempt

---

[1] It is the fraud allegedly perpetrated by Anderson on Allison that gave rise to Auto-Owner's obligation to defend the Hutson claim, resulting in the claim for indemnity at issue here.  As the Court has previously noted, "Allison's injury then fell upon Auto-Owners . . . ." (Order of 02/19/04 [doc 21] at 8.)  Auto-Owners was not, itself, the direct victim, but only a secondary victim of Anderson's direct fraud allegedly perpetrated upon Allison.

here to define the precise showing that Auto-Owners will have to make in order to succeed on its claim. However, in an effort to guide the parties, the Court notes that it anticipates that at trial, the jury will be asked to determine by a preponderance of the evidence whether Auto-Owners acted reasonably when it settled the case, in light of the defenses available to Allison Metals, as well as the facts and circumstances known to Auto-Owners at the time of the settlement. The jury will not be required or asked to find whether Allison Metals was actually liable to Hutson.

The Court anticipates that this case will be tried at the next Valdosta term of court, currently scheduled to begin September 18, 2006.

**SO ORDERED**, this the 5th day of July, 2006.

s/   Hugh Lawson
**HUGH LAWSON, JUDGE**

mls